C. D. CALBECK, Deputy Labor Commissioner, Eighth Compensation District, and Mrs. Alberta Gee, Individually and on behalf of her minor children Rivers Gee and Andrew Gee, Appellants,

v.

STRACHAN SHIPPING COMPANY and Texas Employers' Insurance Association, Appellees.

No. 19034.

United States Court of Appeals
Fifth Circuit.

Aug. 1, 1962.

W. Jiles Roberts, Jack Shepherd, Asst. U. S. Atty., Houston, Tex., Morton Hollander, W. Harold Bigham, Marvin S. Shapiro, Attys., Dept. of Justice, Wash-

ington, D. C., William H. Orrick, Jr., Asst. Atty. Gen., Woodrow Seals, U. S. Atty., for appellants.

C. A. Brown, Galveston, Tex., for appellees, Royston, Rayzor & Cook, Galveston, Tex., of counsel.

Before TUTTLE, Chief Judge, and HUTCHESON and JONES, Circuit Judges.

JONES, Circuit Judge.

The Deputy Labor Commissioner made an award to the widow and children of Matthew Gee under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The district court reached the conclusion that the award was not supported by substantial evidence on the record as a whole. It set aside the award and the Deputy Commissioner has appealed.

Matthew Gee was a sixty-year-old stevedore. On March 5, 1957, while employed by the appellee, Strachan Shipping Company, he was engaged in the unloading from a vessel to a barge of triple superphosphate fertilizer. The conveyer belt which was moving the fertilizer "choked up" and a quantity of the fertilizer "splattered over" Gee and he stated to a coworker that he was "all choked up in his chest." He went home and complained to his wife about his chest. On the next day Gee visited Dr. J. F. Rader and reported to him that the fertilizer got into his chest, made his chest, eyes and nose hurt, and made his breathing difficult. Dr. Rader believed that Gee's trouble was bronchitis caused by the fertilizer and prescribed an antihistamine. Gee improved but his condition again worsened. He was X-rayed and hospitalized. The X-ray indicated a residuum or effusion in the left chest.

Dr. Rader, suspecting that Gee had carcinoma of the lung referred him to Dr. Tom R. Jones, a specialist in diseases of the heart and lungs. Dr. Jones made an examination resulting in a tentative diagnosis of either carcinoma or tuberculosis. Tests were made eliminating the latter. Dr. Jones formed an opinion during the early part of May, 1957, that Gee had a lung carcinoma which was incurable and inoperable. He was also of the opinion that this condition was also present on March 12, 1957, when X-rays had been made. Gee was admitted to a Veterans Hospital in Houston on August 26th, where Dr. Jones' diagnosis was confirmed by a biopsy. He returned home on September 5th on leave of absence, returned on September 29th, and five days later, on October 4, 1957, died. Compensation benefits were claimed by Gee's widow and children under the Act. The Deputy Commissioner found that Gee's death was proximately caused, aggravated or accelerated by the employment. Benefits, as provided in the Act, were awarded. The employer and its insurance carrier sought a review in the District Court of the Southern District of Texas and prayed for injunctive relief against the enforcement of the Deputy Commissioner's award. The district court granted the relief sought, supporting its decision by a written opinion. Strachan Shipping Company v. C. D. Calbeck, Deputy Commissioner, D.C., 190 F.Supp. 255. From the final judgment of the district court enjoining the enforcement of the award, the Deputy Commissioner and the widow and children of Gee have appealed.

■ ■ The question before the district court, as stated and decided by it, was whether there was reliable, probative, and substantial evidence in the record as a whole to support the Deputy Commissioner's finding that the "fertilizer incident" resulted in Gee's permanent disability and caused or accelerated his death. Such is the question before us, as it is submitted by the Deputy Commissioner. The Deputy Commissioner states, as the rule by which we should be guided, that an award can be made even though the claim is unsupported by, or is even in conflict with, medical evidence, if there is other evidence tending to establish causation. From this statement of principle the Deputy Commissioner reasons that the sequence of

physical events justifies the finding of causation, and states that it is the Deputy Commissioner's task to decide whether the given injury is to be deemed the legal cause of the given consequence. It is not to be doubted that the findings of triers of fact who reach conclusions contrary to the weight of the medical testimony may be upheld. Sentilles v. Inter-Caribbean Shipping Corporation, 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142; Todd Shipyards Corporation v. Donovan, Deputy Commissioner, 5th Cir.1962, 300 F.2d 741. An injury which hastens an employee's death may be regarded as causing it. Mississippi Shipping Co. v. Henderson, 5th Cir.1956, 231 F.2d 457.

In the Deputy Commissioner's order there is included in his findings of fact the following statement:

"The employee's death was the result of the natural and unavoidable progression of the injury and the conditions and the ailments that were proximately caused, aggravated or accelerated by the employment. The injury and death arose out of and in the course of the employment. The chain of causation proceeded in a logical and orderly fashion and was direct and continuous from the day of the injury to and including the day of death."

The uncontroverted fact is that Gee had cancer of the lung which had probably spread to the pleural cavity prior to March 5, 1957, and by that date his condition had progressed to the incurable stage. There is nothing more than surmise and conjecture, there is no substantial evidence, to support a finding that the fertilizer accelerated the growth of the cancer or that the cancerous condition was aggravated by it. If the judgment of the district court is to be reversed and the award of the Deputy Commissioner is to be reinstated, it must be as a result of a determination that substantial evidence shows that the fertilizer incident masked the cancer and so delayed its diagosis that treatments were not given which probably would have prolonged Gee's life for a brief period of time. Such is the somewhat narrow question before us.

The review is of the record as a whole, and the administrative order is to be sustained if it appears, upon that review, that substantial evidence supports the findings. Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; O'Leary, Deputy Commissioner, v. Brown-Pacific Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483. Questions of credibility are for the Deputy Commissioner to determine. National Labor Relations Board v. Walton Manufacturing Co., 369 U.S. 404, 82 S. Ct. 853, 7 L.Ed.2d 829. The burden of showing that the accident caused an acceleration of the death of the employee was upon the claimant. Gooding v. Willard, 2nd Cir.1954, 209 F.2d 913.

If the whole record has within it the substantial evidence that is required to sustain the finding, that evidence must be found in the testimony of Dr. James G. Jones. He was a specialist in internal medicine and at the time of the hearing had been practicing for a year in the City of Houston. He had never examined Gee and so his testimony was based upon the clinical and hospital records, upon X-rays and upon the hypotheses incorporated in the questions of counsel. The doctor expressed the opinion that the fertilizer masked Gee's true condition and delayed a diagnosis of cancer so that it progressed beyond the stage at which treatment might have been given which probably would have prolonged his life by as much as two or three months. If his life was not prolonged, it can be said that his death was accelerated. But this is not all that Dr. Jones said in his testimony. The prolongation of Gee's life would probably have resulted if there had been an early diagnosis of cancer. He "guessed" that the pleural effusion, which he opined was masked by the effect of the fertilizer incident, had existed for several weeks prior to the in-

cident. On cross-examination he gave an affirmative answer to this question,

> "And the only thing that you are in a position to say now, as I understand it, is that had it not been for the fertilizer incident, there is a possibility that the cancerous condition would have been discovered at an earlier date and there is then a possibility that his life may have been prolonged possibly two or three months."

Thus that which had been a probability on direct examination became only a possibility on cross-examination. The doctor was further questioned about his opinion as to the prolonging effect of the treatment he would have given. He adhered to his opinion that Gee, if he had been diagnosed as cancerous at an earlier date, and if he had been given the treatments that the doctor would have given, would probably have lived two or three months longer. But this was qualified and, we think, contradicted by the statement that "Well, how long they will go on and how much benefit, of course, nobody can predict."

The opinion testimony of the claimant's expert, Dr. James C. Jones, that the fertilizer hastened the death of Gee, was uncertain and contradictory. It was based upon surmise and conjecture. It was the result of piling presumption upon presumption and drawing inference from inference. We reach the conclusion that this testimony cannot be regarded as substantial evidence to support the crucial finding that the death was hastened by the fertilizer. Cf. Whitten v. Liberty Mutual Insurance Company, 5th Cir.1958, 257 F.2d 699. The testimony of the doctors who examined Gee was all to the effect that the fertilizer episode neither caused nor aggravated Gee's cancerous condition nor caused or hastened his death. This testimony was considered by the Deputy Commissioner and, it seems, was by him rejected. It need not, therefore, be further discussed by us. If all of the medical testimony be rejected, and perhaps it was rejected by the Deputy Commissioner, we are to inquire as to whether there is other substantial evidence which will warrant the inference drawn by the Deputy Commissioner. Sentilles v. Inter-Caribbean Corporation, supra; McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. Apart from the testimony of the doctors with respect to the questions of aggravation of the cancer and acceleration of the death, the testimony shows that Gee had an incurable cancer, that he inhaled some of the fertilizer, that this caused a bronchial irritation accompanied by a burning sensation, that Gee died, and that the cancer was the cause of his death. We are urged to say that the proof of these facts constitutes substantial evidence that Gee's death was accelerated by the injury of the fertilizer. The premise may be accepted but the conclusion does not follow. We fail to find substantial evidence of causation that must appear before the claimant can prevail. The district court reached the determination that this substantial evidence was not to be found in the record. We reach the same conclusion. The judgment of the district court is

Affirmed.

HUTCHESON, Circuit Judge (dissenting).

A careful consideration of the majority opinion in the light of the record and of the principles governing our review of the decision below, leaves me with the firm conviction that the judgment of the district court should be reversed rather than affirmed.

Without undertaking to set out or discuss the evidence, it is sufficient for me to say that I cannot agree with the majority in its conclusion that the testimony of Dr. Jones, as set out and discussed in the opinion, and the lay testimony in the case taken together do not furnish sufficient basis for the finding of the deputy commissioner. On the contrary, it seems clear to me from the record and from the opinion of the majority itself that the district judge's conclusion and judgment were wrong and that they should be reversed with

·directions to enter judgment in favor of the deputy commissioner and the widow and children of Gee.

I must, therefore, dissent from the ·opinion of the majority.